IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ROMONDO BOOTCHEE,
#Y26954,

      Plaintiff,

v.

WARDEN GALLOWAY,
SGT GRIM,
SGT GOINES,
C/O COULSON,
LIEUTENANT SULLIVAN,
LIEUTENANT BANKS,
LIEUTENANT HORN,
C/O JOHN DOE #1,
MOORE,
NURSE ROBIN, and
NURSE HEATHER,

      Defendants.

Case No. 25-cv-00794-SPM

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

    Plaintiff Romondo Bootchee, an inmate of the Illinois Department of Corrections who is currently incarcerated at the Western Illinois Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Plaintiff claims that while housed at Shawnee Correctional Center[1] he was subjected to excessive force and received inadequate treatment. He seeks monetary damages.

---

[1] Although Plaintiff refers to this correctional institution as "Shawnee Correctional Facility," (Doc. 1, pg. 3), the Court will refer to the institution by its official name, Shawnee Correctional Center (Shawnee).

1

The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests monetary damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff alleges the following: On or about January 20, 2024, while housed in the restricted housing unit at Shawnee, breakfast trays were being passed out by Sergeant Grim, who was cursing at inmates and closing chuckholes too fast for inmates to receive their breakfast trays. (Doc. 1, p. 3). When Plaintiff was retrieving his breakfast tray from Grim, Grim stated, "You are not quick enough," and purposely slammed the chuck hole on Plaintiff's finger. Plaintiff experienced "excruciating" pain, lightheadedness, and bleeding. Plaintiff asked Grim for medical attention, and Grim only laughed. Lieutenant Sullivan and Correctional Officer John Doe #1 also laughed and ignored Plaintiff's injuries. (*Id.*). The following day, Plaintiff asked various correctional staff for assistance but was again refused medical attention. (*Id.* at p. 4). Because they did not want to "go[] against a colleague" or "help[] someone who has a problem with a friend," staff refused to give Plaintiff aid. (*Id.*).

On January 23, 2024, Nurse Robin treated Plaintiff's finger while she was making rounds to each cell. (Doc. 1, p. 4). Nurse Robin gave Plaintiff ibuprofen and wrapped and taped Plaintiff's injured fingers together. (*Id.*).

On January 24, 2024, Plaintiff requested medical attention because he was experiencing shortness of breath and fatigue. (Doc. 1, p. 4). In response, a Code 3 medical emergency was initiated. While Plaintiff was being escorted to healthcare, Goines and Coulson threatened Plaintiff, stating, "We should break your other hand," "Just beat the fuck out of you, for filing a Grievance on our Colleague [sic]," and "If you stay in Shawnee We Will Get the Chance [sic]." (*Id.*).

At healthcare, Plaintiff informed Nurses Robin and Heather that he was experiencing shortness of breath and fatigue. (Doc. 1, p. 4). The nurses did not treat Plaintiff in anyway and failed to check his blood pressure, conduct an EKG, or administer breathing exercises. Nurses Robin and Heather told Goines and Coulson that there was "nothing wrong with him." They ridiculed Plaintiff, stating that he was "just being a baby because he has a boo boo." (*Id.*). They also instructed Goines and Coulson to take from Plaintiff the ibuprofen that had previously been dispensed for his finger. (*Id.* at p. 4, 6).

Following the appointment with Robin and Heather, Goines and Coulson escorted Plaintiff back to his cell in restrictive housing. (Doc. 1, p. 5). On the way, while Plaintiff was handcuffed, they slammed Plaintiff's head into the door, scrapped his face against the walls, and slammed him to the ground. They then grabbed, bent and squeezed his fingers. Goines and Coulson also began to put their knees into

3

Plaintiff's neck and back, saying, "[y]ou are going to wish you were dead when we finish with you." Plaintiff was screaming and an unnamed lieutenant ordered them to stop. Goines and Coulson stopped, and at the previous instruction of Nurses Robin and Heather, Grim took away Plaintiff's ibuprofen. Goines and Coulson claimed, "This is what happens when someone messes with one of us, filing a grievance huh." Plaintiff was then placed back into his cell. (*Id.*).

On or about January 25, 2024, Plaintiff received x-rays on his fingers. (Doc. 1, p. 5). After returning to his cell, he yelled for emergency medical attention because his fingers were hurting him. Sergeant Marriman came to his cell and placed Plaintiff in a holding cell to wait for a nurse, but a nurse did not come. Sergeant Marriman "took it upon himself to help [Plaintiff] to get some pain medication." (*Id.*).

On January 26, 2024, Plaintiff was released from restrictive housing. (Doc. 1, p. 6). Plaintiff telephoned his mother and told her about what had happened during his time in restrictive housing. That evening, he went to healthcare to retrieve the ibuprofen that had previously been confiscated from his cell by Goines, Coulson, and Grim. While there, he tried to report about the events that had transpired while he was in restrictive housing to Lieutenant Horn. Horn dismissed his complaints as being unserious. Plaintiff returned to his cell, and around 10:45 p.m., unknown correctional officers "shookdown" Plaintiff's cell and took the ibuprofen. (*Id.*).

On January 27, 2025, Plaintiff was called to healthcare, where Internal Affairs Officer Moore took pictures of Plaintiff's injuries and told Plaintiff that an investigation had been initiated after his mom had called the facility and expressed

4

her anger. (Doc. 1, p. 6). Plaintiff was seen by Nurses Mandy and Hilary, who told Plaintiff that they were unable to treat him at the facility. Plaintiff was taken to the hospital, where he received surgery on his finger due to a "severe" infection. (*Id.*).

## PRELIMINARY DISMISSAL

All intended claims against Warden Galloway are dismissed without prejudice. Plaintiff does not assert any allegations against this individual in the Complaint, and merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Warden Galloway also cannot be held liable under Section 1983 solely because he holds a supervisory position. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to designate the following counts:

**Count 1:** Eighth Amendment claim against Grim, John Doe #1, and Sullivan for the use of excessive force against Plaintiff on January 20, 2024.

**Count 2:** Eighth Amendment claim against Grim, John Doe #1, Sullivan, Nurse Robin, Nurse Heather, Horn, Coulson, and Goines for deliberate indifference to Plaintiff's finger injury.

**Count 3:** Eighth Amendment claim against Nurse Robin and Nurse Heather for deliberate indifference to Plaintiff's breathing issues and fatigue on January 24, 2024.[2]

---

[2] To the extent Plaintiff is bringing a Fourteenth Amendment substantive due process claims for deliberate indifference of his serious medical needs by Defendants Robin and Heather (Doc. 1, p. 8), the claims are dismissed. The Court will examine that claims as violations of the Eighth Amendment in Counts 2 and 3. *See Cnty. Of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (where a claim is covered by a more specific constitutional provision, such as the Eighth Amendment, the Supreme Court had held that the claim must be analyzed under the standard appropriate to that specific provision instead of substantive due process).

**Count 4:**   First Amendment claim against Goines, Grim, Coulson, Horn, John Doe #1, Moore, Banks, and Sullivan for retaliating against Plaintiff.

**Count 5**:   Eighth Amendment claim against Goines, Coulson, and Grim for the use of excessive force against Plaintiff on January 24, 2024.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[3]

### Count 1

Plaintiff's claim against Grim for the use of excessive force on January 20, 2024, survives preliminary review. *See DeWalt v. Carter*, 224 F.3d 607, 619–20 (7th Cir. 2000).

Plaintiff's claim against John Doe #1 and Sullivan for their failure to intervene and stop the use of excessive force of Grim on January 20, 2024, also survives preliminary review. (Doc. 1, p. 7). *See Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982) ("An official satisfies the personal responsibility of § 1983 if she acts *or fails to act* with a deliberate or reckless disregard of the plaintiff's constitutional rights."). Under this rule, officers who observe a fellow officer using excessive force and have a realistic opportunity to intervene—but choose not to—may be held liable for the resulting constitutional violation. *See Miller v. Smith,* 220 F.3d 491, 495 (7th Cir. 2000); *See, e.g., Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (7th Cir. 2007).

**Count 2**

Plaintiff alleges that Grim, John Doe #1, Sullivan, Nurse Robin, Nurse Heather, Horn, Coulson, and Goines refused to provide adequate and timely medical care after his hand was injured on January 20, 2024. To plead an Eighth Amendment claim for deliberate indifference a plaintiff must allege that the defendant was aware of the serious condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). Plaintiff claimed that Grim sarcastically said he "would see" about providing Plaintiff with medical care and never did. (Doc. 1, p. 3). John Doe #1 and Sullivan laughed and ignored Plaintiff's medical need. (Doc. 1, p. 3). Nurse Robin and Nurse Heather disregarded Plaintiff's injury and did not provide him with medical care during the appointment on January 24, 2024. (Doc. 1, p. 4). Plaintiff reported his mistreatment and injury to Lieutenant Horn, who told him to "suck it up." (*Id.* at p. 6). And finally, Grim, Coulson, and Goines confiscated Plaintiff's ibuprofen at the direction of Robin and Heather. These allegations are sufficient to state an Eighth Amendment claim for deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

**Count 3**

Plaintiff's claims against Nurse Robin and Nurse Heather for deliberate indifference to Plaintiff's breathing issues and fatigue on January 24, 2024, survives preliminary review. *Snyder*, 546 F.3d 516, 524.

## Count 4

Plaintiff alleges Goines, Coulson, and Grim retaliated against Plaintiff for filing grievances against them and other prison officials by threatening him with and engaging in physical violence. (Doc. 1, p. 4–5). These allegations state a viable claim for retaliation against Defendants and survive preliminary review. *Gomez v. Randle,* 680 F. 3d 859, 866 (7th Cir. 2012).

Count 4 is dismissed as to Horn, John Doe #1, Moore, Banks, and Sullivan. To state a First Amendment retaliation claim at the pleading stage, a plaintiff must plausibly allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez,* 680 F. 3d at 866 (quoting *Bridges v. Gilbert,* 557 F. 3d 541, 546 (7th Cir. 2009)). Other than stating that Horn, John Doe #1, Moore, Banks, and Sullivan retaliated against him, (*see* Doc. 1, p. 7), Plaintiff does not provide any facts to support his conclusory allegation. *Brooks v. Ross,* 578 F. 3d 581 (7th Cir. 2009) (conclusory statements are not sufficient to state a claim). Therefore, Count 4 is dismissed as to Horn, John Doe #1, Moore, Banks, and Sullivan.

## Count 5

Plaintiff's claims against Goines, Coulson, and Grim for the use of excessive force on or about January 24, 2024, survives preliminary review. *See DeWalt v. Carter*, 224 F.3d 607, 619–20 (7th Cir. 2000).

### IDENTIFICATION OF UNKNOWN DEFENDANTS

Plaintiff will have the opportunity to engage in limited discovery to ascertain the identity of the unknown defendant. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Although all claims are dismissed against Warden Galloway, Galloway will remain a defendant in his official capacity only for the purpose of responding to discovery aimed at identifying the John Doe. Guidelines and information for discovery will be set by a separate order once all Defendants are served.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 2), which is **DENIED.**[4] Plaintiff discloses three unsuccessful efforts to contact attorneys via written correspondence. Accordingly, he appears to have made reasonable efforts to retain counsel on his own. With respect to his ability to pursue this action pro se, Plaintiff indicates that his imprisonment will greatly limit his ability to litigate this case, particularly to investigate and conduct discovery regarding his claims. He also states that he has not experience representing himself in a civil legal proceeding, and a lawyer will be needed to properly draft briefs and questioning witnesses. Despite these obstacles, the Court finds that Plaintiff can proceed pro se, at this early stage. Plaintiff's pleadings demonstrate an ability to construct coherent sentences and relay information to the Court. There is no indication that he will be unable to produce initial disclosures or provide descriptive information to Defendants in order to

---

[4] In evaluating Plaintiff's Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

identify John Doe #1. No legal training or knowledge is required to preform these tasks. Once discovery on the merits has commenced, if Plaintiff has significant difficulty, he may refile his motion.

## Disposition

For the reasons stated above, **Count 1**, shall proceed against **Grim**, **John Doe #1**, and **Sullivan**; **Count 2** shall proceed against **Grim**, **John Doe #1**, **Sullivan**, **Nurse Robin**, **Nurse Heather, Horn, Coulson,** and **Goines**; **Count 3** shall proceed against **Nurse Robin** and **Nurse Heather**; **Count 4** shall proceed against **Goines**, **Grim**, **Coulson**, but is **DISMISSED** without prejudice against **Horn**, **John Doe #1**, **Moore**, **Banks**, and **Sullivan**; **Count 5** shall proceed against **Goines**, **Coulson**, and **Grim**. All claims against Warden Galloway are **DISMISSED** without prejudice.

Because there are no surviving claims against Moore or Banks, the Clerk of Court is **DIRECTED** to **TERMINATE** Moore and Banks as Defendants.

Because Plaintiff's claims involve his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Galloway (official capacity only), Grim, Goines, Coulson, Sullivan, Horn, John Doe #1 (once identified), Robin, and Heather the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to each

Defendant's place of employment as identified by Plaintiff. If any Defendant fails to sign and return the Waiver of Service of Summons (Form 6) within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if unknown, the last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or otherwise disclosed.

Each Defendant is **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, each Defendant only needs to respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Plaintiff and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed in *forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in

writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

IT IS SO ORDERED.

DATED: June 23, 2025

        *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.